**ZAKAY LAW GROUP, APLC**
Shani O. Zakay (State Bar #277924)
shani@zakaylaw.com
Eden Zakay (State Bar #339536)
eden@zakaylaw.com
Nicole Noursamadi (State Bar #357246)
nicole@zakaylaw.com
Jaclyn Joyce (State Bar #285124)
jaclyn@zakaylaw.com
3110 Camino Del Rio S, Suite 308
San Diego, CA 92108
Telephone: (619) 255-9047

Attorneys for PLAINTIFF

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSH MONTES an individual, on behalf of Plaintiff, and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYATT CORPORATION dba THE SEABIRD -A DESTINATION HOTEL, a Delaware corporation; OCEANSIDE BEACH RESORT OWNER, LLC, a Delaware limited liability company; S.D. MALKIN PROPERTIES, INC., a Delaware corporation; S.D. MALKIN OCEANSIDE, LLC, a Delaware limited liability company; DH2 HOLDING LLC dba MISSION PACIFIC HOTEL, a Delaware limited liability company; and DOES 1-50, Inclusive,<br><br>Defendants. | Case No. 3:26-cv-01412-DMS-BJW<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO REMAND ACTION TO STATE COURT**<br><br>Date: June 5, 2026<br>Time: 1:30pm<br>Courtroom: 13A<br><br>District Judge: Hon. Dana M. Sabraw<br>Courtroom: 13A<br>Magistrate Judge: Hon. Brian J. White<br>Courtroom: 5A<br><br>Action Filed: December 5, 2025<br>Removed: March 5, 2026 |

## I.    **INTRODUCTION**

Defendant Hyatt Corporation's ("Defendant") Opposition to Plaintiff's Motion to Remand ("Opposition") fails to put forth the summary-judgment-type evidence needed to support an amount in controversy of over $5 million.  When a plaintiff contests the removal of an action under the Class Action Fairness Act ("CAFA"), the Court must test CAFA's requirements "by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015).  Defendant's Opposition gave it a <u>second</u> opportunity to provide competent evidence in support of its Notice of Removal, though Defendant once again chose instead to rely on unsupported assumptions based on incomplete data.

Generally, Defendant's Opposition fails to address the issues raised by Plaintiff in his Motion to Remand ("Motion").  Defendant's Opposition argues past Plaintiff's Motion, mainly citing to other courts in other cases where specific violation rates were deemed reasonable under different circumstances.  The largest issue raised by Plaintiff's Motion was that Defendant has already done its own investigation into the meal and rest period violation rates, in connection with a separate wage and hour PAGA action filed against it.  Defendant chose to ignore those rates, and instead use assumed rates that are significantly higher, in order to inflate the amount in controversy here.  Defendant's Opposition does not deny that it conducted its own investigation, but merely argues that it shouldn't have to comb through its business records.

Second, Defendant's wage statement damages calculation is fatally derivative of its inflated meal and rest period assumptions and cannot survive scrutiny under *Weaver*.  Third, Defendant's assumption that each Class Member worked thirty minutes off-the-clock every single week is unsupported by any evidence and untethered to the specific allegations in the First Amended Complaint ("FAC"). Fourth, Defendant's 100% violation rate for waiting time penalties, applied at the full thirty-day statutory

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION IN SUPPORT OF MOTION TO REMAND ACTION TO STATE COURT

maximum, is irreconcilable with the FAC's "from time to time" allegations and the *Javier* action's own data showing an average workday of 7.3 hours. Fifth, Defendant's expense reimbursement assumption is speculative and unsupported by any evidence that all non-exempt hotel employees used personal cell phones or vehicles for business purposes. Finally, because each of these underlying calculations is flawed, the attorneys' fees estimate built upon them is likewise unreliable, as is Defendant's use of a 25% benchmark.

In sum, Defendant has not provided evidence supporting the amount in controversy for purposes of asserting subject matter jurisdiction under the CAFA. Thus, this Court must find that Defendant has failed to establish the propriety of federal jurisdiction and remand this case to San Diego Superior Court.

## II.    ARGUMENT

### A. Defendant's Meal and Rest Break Assumptions Should be Disregarded

Defendant's Notice of Removal ("NOR") estimated a total of $5,084,226 in damages resulting from Plaintiff's claims for non-compliant meal and rest periods. Defendant calculated this number in part by assuming each Class Member missed one meal period each week, and was thus owed one meal premium payment per week (See NOR at ¶ 44). Defendant's Opposition frames this as a 10% meal period violation rate. (See Opposition at 11:11-12). However, assuming an employee works five days per week, the maximum number of meal period premiums they would be entitled to in that week is five, *i.e.* one per work day. *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 69 (2011); See also *Corder v. Houston's Restaurants, Inc.*, 424 F. Supp. 2d 1205, 1207 (C.D. Cal. 2006) ("Thus, the plain wording of [Labor Code section 226.7] is clear that an employer is liable per work day, rather than per break not provided.") Thus, the payment of one meal period premium per work week, when the maximum the employee would be entitled to is five premiums that week, is a 20%

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION IN SUPPORT OF MOTION TO REMAND ACTION TO STATE COURT

violation rate, **not** a 10% violation rate.

Likewise, Defendant assumed that each Class Member missed two rest periods per week, and thus calculated the rest period damages by assuming each Class Member would be owed two rest period premiums per week. (See NOR at ¶ 51). Defendant's Opposition framed this as a 20% rest period violation rate. (See Opposition at 11:12-13). But again, because an employee is only entitled to one rest period premium per day, even if more than one rest period that day is missed, the maximum number of rest period premiums an employee would be entitled to in a given workweek is five. See *United Parcel Serv. Wage & Hour Cases*, *supra*, at 69. Thus, assuming the payment of two rest period premiums per week, when the maximum that employee would be entitled to is five rest period premiums, is a 40% violation rate, not a 20% violation rate.

Accordingly, the first problem here is that Defendant's Opposition argues that a 10% violation rate for meal periods and 20% violation rate for rest periods are reasonable. Yet Defendant applied a 20% violation rate for meal periods and a 40% violation rate for rest periods.

The bigger issue, however, is that Defendant is using assumptions at all. Defendant already calculated the *actual* violation rates when it conducted an investigation in connection with a separate wage and hour PAGA action filed against it, *Lukas Javier v. Hyatt Corporation dba The Seabird, San Diego County Superior Court*, Case No. 37-2024-00018273 (the "*Javier* Action"). In other words, there is no need to rely on assumptions here, because Defendant already knows what the meal and rest period violation rates are. Defendant has not denied that it conducted its own investigation into the meal and rest period violation rates, or that these rates are lower than its assumed violation rates of 20% for meal periods and 40% for rest periods. Instead, Defendant cites to case law that states that a defendant does not have to comb through its business records to prove liability. But Defendant is missing the point here, as the cases it relies on did not involve instances in which the defendant had already

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION IN SUPPORT OF MOTION TO REMAND ACTION TO STATE COURT

conducted its own investigation and thus already had the violation rates calculated. Plaintiff is not suggesting that Defendant comb through its business records here to analyze timesheets and calculate its own liability.  Rather, Plaintiff is asserting that it is unreasonable for Defendant to ignore the violation rates it has already calculated, in favor of unsupported assumptions.  See *Lopez v. Advanced Drainage Sys., Inc.*, 777 F. Supp. 3d 1100, 1108 (N.D. Cal. 2025) ("While assumptions and inferences are allowed in calculating the amount in controversy where relevant evidence is not readily available to the party asserting CAFA jurisdiction, if an employer has information in its possession that makes an assumption unnecessary, it is unreasonable for the employer to ignore that information.")

Lastly, Defendant's Opposition argues that even if it used the 15.2% violation rate found by the plaintiff in the *Javier* Action, this would result in higher damages than listed in Defendant's NOR. This is incorrect, as Defendant failed to properly calculate these damages.  Moreover, as Plaintiff noted in his Motion, the 15.2% rate was the rate that the plaintiff in the *Javier* Action came up with, though his motion for settlement approval expressly stated that Defendant <u>*disputed*</u> this rate.   Plaintiff is not suggesting that the court apply the 15.2% rate here.  Plaintiff maintains that Defendant should use the rate it calculated when it conducted its own investigation, which is presumably lower than the 15.2% rate it disputed.

## B. <u>Defendant's Wage Statement Assumption Should Be Disregarded</u>

Plaintiff's Complaint alleges that from time to time, when Plaintiff and other Class Members missed meal and rest breaks, or were paid inaccurately for meal and rest period premiums, or were not paid for all hours worked, their wage statements would be inaccurate. (Complaint at ¶ 27).  In other words, Plaintiff's allegation that Defendant furnished inaccurate wage statements is derivative of Plaintiff's claims for meal and rest period violations and failure to pay wages. Plaintiff's Motion asserted that when wage statement claims are derivative of other claims, the wage statement calculation

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION IN SUPPORT OF MOTION TO REMAND ACTION TO STATE COURT

must be based on a correct calculation of the underlying violations. *Weaver v. Amentum Servs., Inc.*, No. 22-CV-00108-AJB-NLS, 2022 WL 959789, at *4 (S.D. Cal. Mar. 30, 2022), *reconsideration denied*, No. 22-CV-00108-AJB-NLS, 2022 WL 3447511 (S.D. Cal. Aug. 17, 2022) (if Defendant's calculations for missed meal and rest periods are faulty, then the wage statement violation calculations are also inherently flawed). Defendant did not address the *Weaver* case in its Opposition, and instead claimed that its assumption that each and every Class Member was issued a non-compliant wage statement for the entirety of the statutory period is reasonable because, in its view, Plaintiff "strategically sprinkled" the "from time to time" language into the Complaint. (See Opposition at 14:23-24).

Plaintiff's use of "from time to time" language throughout the FAC is a deliberate pleading choice that signals the *frequency of violations* and should inform the Court's assessment of whether Defendant's assumed rates bear a reasonable relationship to the complaint's allegations. Defendant's use of a 20% violation rate for meal periods, 40% violation rate for rest periods, and 30 minutes of off-the-clock work per person per week is unsupported by the FAC.  Thus, assuming a 100% violation rate for wage statements is likewise unsupported.  *See also Sanders v. Old Dominion Freight Line*, Inc., No. 16-CV-2837-CAB-NLS, 2017 WL 5973566, at *5 (S.D. Cal. Feb. 2, 2017) ("An allegation that a violation occurred 'from time to time' does not support the use of a 100% violation rate, or more accurately, the 98.7% violation rate [defendant] used for its estimate of the amount in controversy for this claim.")

### C. **Defendant's Unpaid Minimum Wage Assumption Should Be Disregarded**

Defendant's NOR estimated a total of $847,371 in damages resulting from Plaintiff's allegation that Defendant failed to pay all minimum wages. Defendant based this calculation on its assumption that each and every Class Member worked off-the-clock for one half-hour every single week they were employed during the Class Period.

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION IN SUPPORT OF MOTION TO REMAND ACTION TO STATE COURT

Defendant provided no explanation or evidentiary support for this assumption. Defendant's Opposition claims that this 30-minute per week per Class Member assumption is reasonable because other courts have found assumptions of similar amounts of time to be reasonable. However, the reasonableness of the 30-minute-per-week assumption must be evaluated in light of the specific allegations in Plaintiff's FAC, not simply by reference to the range of estimates courts have accepted in other cases. The FAC alleges that Class Members were not paid for all hours worked due to off-the-clock pre-shift or post-shift work that occurred from time to time. Defendant has made no effort to explain how it came up with its 30-minute per person per week assumption here based on the specific allegations pled. Rather, Defendant simply asserted that it was assuming that Class Members worked 6 minutes off-the-clock every day. Defendant's chain of reasoning must be linked to the actual text of the plaintiff's allegations, and the mere fact that other courts have accepted 30 minutes in other cases involving different complaints and different employers does not establish that 30 minutes is reasonable here.

### D. <u>Waiting Time Penalties Assumption Should Be Disregarded</u>

Defendant's NOR estimated a total of $4,117,605 in damages resulting from Plaintiff's allegation that Defendant failed to pay all wages at the time of separation. Defendant based this calculation on a 100% violation rate. In other words, Defendant assumed that each and every Class Member that was statutorily eligible for waiting time penalties would be owed those penalties for the <u>maximum</u> number of 30 days, and likewise assumed that each of the Class Members worked on average 8 hours per day. As noted in Plaintiff's Motion, Defendant failed to offer any justification for this 100% violation rate, 30-day maximum assumption, or 8 hours-per-day assumption. Once again, rather than providing any information here, such as the average shift length, Defendant simply claims that its 100% violation rate is reasonable because other courts reviewing other complaints filed against other defendants have found a 100% violation

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION IN SUPPORT OF MOTION TO REMAND ACTION TO STATE COURT

rate to be reasonable.

Plaintiff pointed out in his Motion that in the *Javier* Action, the plaintiff's motion for settlement approval noted that the average workday was 7.3 hours, rather than the 8-hour number used by Defendant in its calculation here. Defendant did not address this in its Opposition. Plaintiff's Motion also noted that a 100% violation rate is inconsistent with the text of the FAC, which alleged that violations occurred "from time to time." Again, Defendant's Opposition does not address this.

In short, Defendant's assumption that 100% of terminated employees are owed the full statutory maximum of 30 days' waiting time penalties for 8 hours per day is unreasonable because it conflates the existence of a claim with the certainty of maximum liability. Waiting time penalties under California law require a *willful* failure to pay final wages, and not every employee who may have experienced a meal or rest period violation during employment would necessarily be owed the maximum 30-day penalty upon separation.

### E. **Defendant's Reimbursement Assumption Should Be Disregarded**

Defendant's NOR estimated a total of $341,875 in damages resulting from Plaintiff's allegation that Defendant failed to reimburse necessary business expenses, including use of personal cell phones and vehicles. Defendant calculated this by assuming each and every Class Member should have been reimbursed $5 for every week they worked for Defendant during the Class Period. Once again, rather than tie its assumptions to the theories of liability alleged, Defendant's position here is that $5 per person per workweek for the entirety of the Class Period is reasonable because other courts reviewing other complaints filed against other defendants have found this rate to be reasonable. The court rejected a similar approach by a defendant in *Bryant v. Midwest Constr. Servs., Inc.*, No. CV 21-01588 PA (KKX), 2021 WL 4493845, at *3 (C.D. Cal. Sept. 30, 2021), where the defendant provided no evidence of any actual costs, and the complaint was devoid of such allegations. Defendant operates hotels, and

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION IN SUPPORT OF MOTION TO REMAND ACTION TO STATE COURT

its calculation assumes that each and every individual occupying a non-exempt role within the hotel would have used their personal cell phone and personal vehicle for business purposes. The FAC does not allege this. Instead, the FAC alleges that Defendant violated Labor Code 2802 from time to time during the Class Period. (See Complaint at ¶ 144). Defendant, as the employer, would know which subset(s) of its employees were required to use their personal cell phones and/or personal vehicles, but Defendant failed to provide any data or declaration on this issue. Again, Plaintiff asks that this calculation be disregarded.

### F. Defendant's Attorneys' Fees Assumption Should be Disregarded

Defendant's NOR estimated a total of $2,906,469 in attorneys' fees. (See pg. 28 of NOR). Defendant calculated this by taking 25% of its estimated total of the amount of controversy. Plaintiff's Motion noted two separate problems with this calculation, neither of which Defendant addressed in its Opposition. First, using a 25% benchmark in fee-shifting cases such as this will overestimate the attorneys' fees recoverable, since these cases "usually settle for **significantly less** than the entire amount in controversy calculated at the outset of the case based on all claims in issue." *Gurzenski v. Delta Air Lines, Inc.*, No. 221CV05959ABJEMX, 2021 WL 5299240, at *5 (C.D. Cal. Nov. 12, 2021) (emphasis added). Defendant's Opposition is silent on this point, instead simply stating that other courts have allowed for a 25% benchmark. Defendant also argues that a 25% benchmark is appropriate here because Plaintiff's Counsel "has sought and received awards in excess of 25% of a settlement as attorneys' fees". (See Opposition at 18:3-10). This is the same problem highlighted by Plaintiff in his Motion. The cases relied upon by Defendant are instances in which Plaintiff's Counsel reached a **settlement** of a case, and as part of that settlement, negotiated attorneys' fees as a percentage of the common fund. This is precisely the issue that the court highlighted in *Gurzenski.* Attorneys' fees of 25% or more of the common fund as part of a settlement cannot be compared to 25% of the maximum liability for purposes of

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION IN SUPPORT OF MOTION TO REMAND ACTION TO STATE COURT

establishing the amount in controversy, since the settlement amount is going to be significantly less than the maximum liability.

Second, Plaintiff's Motion noted that a 25% rate of Defendant's total liability valuation is flawed here because the valuation itself is flawed, for all the reasons outlined by Plaintiff in his Motion and above. As noted by this Court in *Valdez v. Fairway Indep. Mortg. Corp.*, No. 18-CV-2748-CAB-KSC, 2019 WL 3406912, at *6 (S.D. Cal. July 26, 2019), "because such uncertainty surrounds Defendant's calculation of damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee, which Defendant recommends, would necessarily place the amount in controversy over the $5,000,000 CAFA threshold." (quoting *Campbell v. Vitran Express, Inc.*, No. CV-10-04442 RGK(SHX), 2010 WL 4971944, at *4 (C.D. Cal. Aug. 16, 2010)).

### III.   CONCLUSION

Defendant's Opposition to Plaintiff's Motion to Remand has done nothing to bolster its attempt to satisfy CAFA jurisdiction. Rather, its Opposition exposed Defendant's inability to prove the propriety of federal jurisdiction. For the reasons outlined in this brief, as well as those in Plaintiff's Motion to Remand, Plaintiff respectfully requests this Court to remand this action to San Diego County Superior Court.

Dated: May 29, 2026

ZAKAY LAW GROUP, APLC

By: _____
Jaclyn Joyce, Esq.
Shani O. Zakay, Esq.
Attorney for PLAINTIFF

9