SEYFARTH SHAW LLP
Brian Long (SBN 232746)
bplong@seyfarth.com
Richard B. Mojica (SBN 327078)
rmojica@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:  (213) 270-9600
Facsimile: (213) 270-9601

SEYFARTH SHAW LLP
Michael Afar (SBN 298990)
mafar@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendant
HYATT CORPORATION dba THE SEABIRD A
DESTINATION HOTEL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSH MONTES an individual, on behalf of Plaintiff, and on behalf of all persons similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> HYATT CORPORATION dba THE SEABIRD - A DESTINATION HOTEL, a Delaware corporation; OCEANSIDE BEACH RESORT OWNER, LLC, a Delaware limited liability company; S.D. MALKIN PROPERTIES, INC., a Delaware corporation; S.D. MALKIN OCEANSIDE, LLC, a Delaware limited liability company; DH2 HOLDING LLC dba MISSION PACIFIC HOTEL, a Delaware limited liability company; and DOES 1-50, Inclusive, <br><br> Defendants. | Case No. 3-26-cv-01412-DMS-BJW <br><br> **DEFENDANT HYATT CORPORATION'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:        August 28, 2026 <br> Time:        1:30 pm <br> Dept:        13A (13th Floor) <br> Judge:      Hon. Dana M. Sabraw <br><br> Compl. Filed:    December 5, 2025 <br> FAC Filed:        January 9, 2026 |

**TO PLAINTIFF JOSH MONTES AND HIS ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on August 28 2026 at 1:30 pm before the Honorable Dana M. Sabraw in Department 13A of the U.S. District Court, Southern District of California, located at 333 West Broadway, San Diego, CA 92101, Defendant Hyatt Corporation ("Hyatt") will and hereby does move, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, for an order compelling Plaintiff Josh Montes ("Plaintiff") to arbitrate his individual claims asserted in the operative First Amended Complaint.

Since the Arbitration Agreement that Plaintiff executed contains a class action waiver, Hyatt also will and hereby does move the Court for an order dismissing Plaintiff's proposed class claims. In addition, because all of Plaintiff's individual claims are subject to arbitration, Hyatt requests that this Court enter an order dismissing the case, or in the alternative, staying the case, until such arbitration is completed, pursuant to 9 U.S.C. § 3.

Prior to the filing of this Motion, on June 1, 2026, counsel for Hyatt and Plaintiff met and conferred and discussed the Arbitration Agreement to see whether the parties could come to an agreement. However, the parties were unable to reach an agreement, and Plaintiff has stated his intention to oppose Hyatt's Motion. (*See* Dkt. 15, § III).

This Motion is based on this Notice of Motion and Motion to Compel Arbitration, the below Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, Declarations of Richard B. Mojica and Jessica Steenblock and the accompanying exhibits, the papers and pleadings on file in this case, and such other evidence and arguments as may be presented to the Court.

1

DATED: June 26, 2026

Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Brian Long*

Brian Long
Michael Afar
Richard B. Mojica
Attorneys for Defendant
HYATT CORPORATION dba THE
SEABIRD A DESTINATION HOTEL

2

DEFENDANT HYATT CORPORATION'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

326558633v.3

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    RELEVANT FACTUAL AND PROCEDURAL HISTORY ..................................2

    A.   The Parties...............................................................................................2

    B.   Plaintiff Agreed to Arbitrate All Claims Covered By The Arbitration Agreement. ...............................................................................................2

    C.   The Arbitration Agreement Requires Arbitration Of Plaintiff's Individual Claims .....................................................................................3

    D.   The Arbitration Agreement Contains A Class Action Waiver ......................3

    E.   Plaintiff Breached The Arbitration Agreement By Commencing This Action And Refused To Arbitrate His Individual Claims And Dismiss His Class Claims.....................................................................................................4

III.   THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS AND DISMISS HIS CLASS ACTION CLAIMS ..........4

    A.   The FAA Governs The Arbitration Agreement ............................................4

        1.   The Arbitration Agreement Provides That It Is Governed By The FAA ..............................................................................................5

        2.   The Arbitration Agreement Evidences A Transaction Involving Commerce And Hyatt Has Multi-State Business Operations..............6

    B.   Plaintiff Agreed To Arbitrate His Claims And The Agreement Is Enforceable.............................................................................................8

        1.   The Parties Entered Into A Valid Agreement.......................................8

        2.   The Arbitration Agreement Covers The Claims Asserted In Plaintiff's First Amended Complaint................................................................10

        3.   The FAA Favors The Enforcement Of Arbitration Agreements........11

    C.   The Arbitration Agreement Allows Plaintiff To Pursue His Legal Rights And Complies With The Requirements Of *Armendariz*...............................11

    D.   The Arbitration Agreement Is Not Unconscionable ...................................13

        1.   The Arbitration Agreement Is Not Substantively Unconscionable....13

        2.   The Arbitration Agreement Is Not Procedurally Unconscionable .....14

        3.   Any Unconscionable Terms Can Be Severed....................................16

    E.   The Class Allegations Must Be Dismissed Because The Arbitration Agreement Contains A Valid Class Action Waiver..........................................17

i

326558633v.3

IV.    THE COURT SHOULD DISMISS, OR IN THE ALTERNATIVE, STAY THE CASE PENDING RESOLUTION OF ARBITRATION ........................................ 19

V.    CONCLUSION ................................................................................................ 20

ii

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
513 U.S. 265 (1995)...............................................................................................5, 7

*Anthony v. Ritz-Carlton Hotel Co., L.L.C.*,
No. 2:24-CV-00965-DAD-AC, 2025 WL 931928 (E.D. Cal. Mar. 27, 2025) ...............................................................................................................19

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)........................................................................................1, 5, 18

*Bayer v. Neiman Marcus Holdings, Inc.*,
582 Fed. Appx. 711 (9th Cir. 2014)..................................................................10

*Borgonia v. G2 Secure Staff, LLC*,
No. 19-cv-00914-LB, 2019 WL 1865927 (N.D. Cal. Apr. 25, 2019).................8

*Chiron Corp. v. Ortho Diagnostic Sys.*,
207 F.3d 1126 (9th Cir. 2000) ...........................................................................8

*CompuCredit Corp. v. Greenwood*,
565 U.S. 95 (2012).....................................................................................6, 11

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008) ...........................................................................8

*Davtian v. Uber Techs., Inc.*,
Case No. 24-cv-5195-CRB, 2024 WL 4861590 (N.D. Cal. Nov. 4, 2024) .......19

*De Alba v. Brinker Int'l, Inc.*,
No. CV 16-3486 FMO, 2017 WL 10543656 (C.D. Cal. June 30, 2017) ...........16

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985).......................................................................................6, 8

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)........................................................................................1, 18

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)............................................................................................15

326558633v.3

*Hawkins v. Ford Motor Co.*,
No. EDCV21881JGBSHKX, 2021 WL 9031130 (C.D. Cal. Nov. 24, 2021) ..................................................................................................................20

*Ingle v. Circuit City Stores, Inc.*,
328 F. 3d 1165 (9th Cir. 2003) ....................................................................................9

*Johnmohammadi v. Bloomingdale's, Inc.*,
755 F.3d 1072 (9th Cir. 2014) ..................................................................................20

*Langston v. 20/20 Cos.*,
2014 WL 5335734 (C.D. Cal. Oct. 17, 2014) ............................................................7

*Larios v. Twp. Bldg. Servs.*,
No. 25-1936, 2025 WL 3172309, 2025 U.S. App. LEXIS 29689 (9th Cir. Nov. 13, 2025) ..........................................................................................................7

*Laver v. Credit Suisse Sec., LLC*,
976 F.3d 841 (9th Cir. 2020) ......................................................................................6

*Maxson v. Beazer Homes Holdings Corp.*,
No. SA CV 17-0583-DOC, 2017 WL 10545078 (C.D. Cal. June 21, 2017) ..........................................................................................................................7

*Mehmud-Bey v. Luxottica of Am. Inc.*,
Case No. 2:24-cv-04605-FWS-MAA, 2024 WL 4818800 (E.D. Cal. Oct. 21, 2024) ..........................................................................................................................19

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983)................................................................................................11, 12

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2016) ..................................................................................17

*Ramirez-Baker v. Beazer Homes, Inc.*,
636 F. Supp. 2d 1008 (E.D. Cal. 2008) ..............................................................14, 15

*Rios v. Sally Beauty Supply LLC*,
Case No. 8:24-cv-00912-JWH-JC, 2025 WL 863616 (C.D. Cal. Feb. 18, 2025) ..........................................................................................................................19

*Rogers v. THD At-Home Servs., Inc.*,
2015 WL 12862912 (C.D. Cal. July 1, 2015)......................................................11, 13

iv

326558633v.3

*Smith v. Spizzirri*,
   601 U.S. 472 (2024)................................................................................20

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010)..................................................................................6

*Suchite v. ABM Aviation, Inc.*,
   741 F. Supp. 3d 878 (S.D. Cal. 2024)....................................................19

*Tercero v. Sacramento Logistics LLC*,
   No. 2:24-cv-00953-DC-JDP, 2025 WL 43125 (E.D. Cal. Jan. 6, 2025)...........19

**California Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal. 4th 83 (2000) ........................................................................*passim*

*Baltazar v. Forever 21, Inc.*,
   62 Cal. 4th 1237 (2016) ........................................................................16

*Barrera v. Apple Am. Grp. LLC*,
   95 Cal. App. 5th 63 (2023) .....................................................................6

*Century Bank v. St. Paul Fire & Marine Ins. Co.*,
   4 Cal. 3d 319 (1971) ..............................................................................9

*Craig v. Brown & Root, Inc.*,
   84 Cal. App. 4th 416 (2000) ..............................................................9, 10

*Diaz v. Sohnen Enters.*,
   34 Cal. App. 5th 126 (2019) ................................................................10

*Dotson v. Amgen, Inc.*,
   181 Cal. App. 4th 975 (2010) ..............................................................14

*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*,
   211 Cal. App. 4th 230 (2012) ................................................................9

*Giuliano v. Inland Empire Pers., Inc.*,
   149 Cal. App. 4th 1276 (2007) ..............................................................7

*Harris v. TAP Worldwide, LLC*,
   248 Cal. App. 4th 373 (2016) ..............................................................10

DEFENDANT HYATT CORPORATION'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
326558633v.3

*Iskanian v. CLS Transp. Los Angeles, LLC*,
59 Cal. 4th 348 (2014), *abrogated on other grounds by Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022) ....................................................18

*Lagatree v. Luce, Forward, Hamilton & Scripps*,
74 Cal. App. 4th 1105 (1999) ..................................................................................15

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
89 Cal. App. 4th 1042 (2001) ...................................................................9, 14, 16

*McMannus v. CIBC World Mkts. Corp.*,
109 Cal. App. 4th 76 (2003) ....................................................................................13

*Rodriguez v. Am. Techs., Inc.*,
136 Cal. App. 4th 1110 (2006) ...................................................................................6

*Stirlen v. Supercuts, Inc.*,
51 Cal. App. 4th 1519 (1997) ..................................................................................14

*Villa Milano Homeowners Ass'n v. Il Davorge*,
84 Cal. App. 4th 819 (2000) ....................................................................................15

*Walnut Producers of Cal. v. Diamond Foods, Inc.*,
187 Cal. App. 4th 634 (2010) ..................................................................................14

**Federal Statutes**

9 U.S.C.
§ 1...............................................................................................................................6
§ 2.........................................................................................................................5, 6
§ 3.............................................................................................................................20
§ 4.........................................................................................................................5, 8

**Other Authorities**

FedArb Rules for Arbitration and Mediation, Rule 11.01 (2021) ...........................13

FedArb Rules for Arbitration and Mediation, Rule 8.01 (2021) .............................12

vi

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Despite signing an agreement to arbitrate all disputes related to his employment on an individual basis only, Plaintiff Josh Montes ("Plaintiff") filed a class action lawsuit against Defendant Hyatt Corporation ("Hyatt"), alleging claims for violations of the California Labor Code and unfair competition under the California Business and Professions Code.

During his employment with Hyatt, Plaintiff signed Hyatt's Mutual Agreement to Arbitrate Pay and Privacy Disputes ("Arbitration Agreement"), which provided that "arbitration is the only forum to address Covered Claims, and that the parties are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration." The "Covered Claims" include the claims asserted by Plaintiff in this action.

Plaintiff cannot maintain this lawsuit because the claims Plaintiff has asserted in this action fall squarely within the scope of the Arbitration Agreement. Not only must Plaintiff submit all claims arising from his employment with Hyatt to arbitration, but such claims can only be arbitrated on an individual (and not a class) basis. This is because the Arbitration Agreement contains a class action waiver, whereby Plaintiff and Hyatt mutually agreed that the arbitration of any Covered Claims must proceed on an individual basis only.

The enforceability of class action waivers cannot be disputed. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018) ("In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings"); *see also AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 348-352 (2011) (class waiver provisions are enforceable under the Federal Arbitration Act ("FAA"), which preempts any state laws invalidating class waivers).

Finally, the Arbitration Agreement that Plaintiff executed is valid and enforceable, as it allows Plaintiff to pursue his individual legal rights and is neither procedurally nor substantively unconscionable. Accordingly, Hyatt respectfully requests that the Court

1

grant the instant Motion, order Plaintiff to arbitrate his claims on an individual basis, and dismiss Plaintiff's class claims.

## II.    RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A.    The Parties

Hyatt is a corporation organized under the laws of the state of Delaware, with its headquarters in Chicago, Illinois. (Dkt. 4, ¶¶ 5-6). Hyatt is part of a global hospitality organization, with a portfolio of over 1,200 hotels and all-inclusive resorts.

On or about May 25, 2022, Plaintiff began his employment with Hyatt as a server for the Valle Restaurant at The Seabird Ocean Resort & Spa (the "Hotel"). (Declaration of Jessica Steenblock ("Steenblock Decl."), ¶ 3).

### B.    Plaintiff Agreed to Arbitrate All Claims Covered By The Arbitration Agreement.

In October 2023, Hyatt began to implement a dispute resolution program, including a mandatory arbitration provision, to employees at the Hotel. (Steenblock Decl., ¶ 4). As part of this effort, the Hotel held various meetings with employees to go over this arbitration agreement. (*Id.* ¶ 5). At each of those meetings, employees were given two copies of a Mutual Agreement to Arbitrate Pay and Privacy Disputes (the "Arbitration Agreement"). (*Id.* ¶ 6). Employees were asked to sign one of those copies acknowledging receipt of it, include their Hyatt Global ID number on it, date it, and return it. (*Id.*) The second copy was given to the employees to keep for their own reference. (*Id.*) Employees were then given ten days to consider the Arbitration Agreement, and were told—verbally and in writing—that their continued employment beyond those ten days would constitute agreement to be bound by the terms set out in the Arbitration Agreement. (*Id.* at ¶ 10, *see also id.*, Ex. A at p. 1.)

In addition to presenting employees with the written agreement, Hyatt prepared and presented a PowerPoint presentation to employees at the meeting, designed to answer a series of expected questions employees might have. (*Id.* ¶ 7).

2

On October 25, 2023, Plaintiff attended a meeting about the Arbitration Agreement at which he received information summarizing the dispute resolution program, and was presented two copies of the Arbitration Agreement. (*Id*. ¶ 9). Plaintiff signed, dated, and returned one of those copies to Hyatt the same day. (*Id*., Ex. A, p. 4).

The Arbitration Agreement is a standalone document in which Plaintiff and Hyatt mutually agreed to "use binding arbitration instead of going to court, for Covered Claims (as defined below) that arise or have arising between you and Hyatt." (*Id*., Ex. A at ¶ 1). Plaintiff accepted the Arbitration Agreement, including the requirement for mandatory arbitration of Covered Claims, by remaining employed through November 4, 2023. (*Id*. at ¶¶ 11–12, Ex. A at p. 1.)

**C.      The Arbitration Agreement Requires Arbitration Of Plaintiff's Individual Claims**

The Arbitration Agreement provides that Plaintiff and Hyatt "agree that Covered Claims will be arbitrated only on an individual basis, and not as part of a class, collective or representative action." (*Id*. Ex. A at p. 1, § 2). The Arbitration Agreement provides that Covered Claims includes "any claims, asserted or unasserted, alleging underpayment or overpayment of wages, overtime, expenses, loans, advances, or any element of compensation, arising out of or based on claims of eligibility for overtime, on-the-clock work, off-the-clock work or other uncompensated hours worked claims, timing or amount of pay at separation, deductions of pay or paid time off, provision of meal or rest periods…[and] pay statements," which are at issue in the instant action. (*Id*., at § 1.)

**D.      The Arbitration Agreement Contains A Class Action Waiver**

The Arbitration Agreement includes a specific provision waiving Plaintiff's ability to bring class claims. The Arbitration Agreement unequivocally provides:

> <u>Waiver of Class and Collective Claims</u>. You and Hyatt also agree that Covered Claims will be arbitrated only on an individual basis, and not as part of a class, collective or representative action. This means that you waive the right to bring, participate in, join, or receive money or any other relief from any class, collective, or representative proceeding. Without Hyatt's consent, an Arbitrator may not: (i) combine more than one individual's claim or claims into a single case; (ii) facilitate notification of others of

3

potential claims; (iii) arbitrate any form of a class, collective, or representative proceedings; or (iv) award relief not limited to the individual claimant.

(Steenblock Decl., Ex. A at p. 1, § 2).[1]

**E.    Plaintiff Breached The Arbitration Agreement By Commencing This Action And Refused To Arbitrate His Individual Claims And Dismiss His Class Claims**

On January 9, 2026, Plaintiff filed his First Amended Class Action Complaint asserting nine (9) wage-and-hour claims under the California Labor Code and the California Business and Professions Code, including: (1) unfair competition; (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4) failure to provide meal periods; (5) failure to authorize and permit rest periods; (6) failure to provide accurate itemized wage statements; (7) failure to timely pay final wages at termination; (8) failure to indemnify employees for expenditures; (9) failure to permit inspection of employee records); and (10) failure to provide gratuities). (Dkt. 1, FAC, ¶¶ 77-156.)

On June 1, 2026, Hyatt's counsel met and conferred with Plaintiff's counsel, and discussed among other items, the Arbitration Agreement, and whether Plaintiff would agree to arbitrate his individual claims and dismiss his class action claims. (Declaration of Richard B. Mojica, ¶3). However, the parties were unable to reach agreement, and Plaintiff stated his intention to oppose Hyatt's Motion. (*Id.*, *see also* Dkt. 15, § III).

**III.   THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS AND DISMISS HIS CLASS ACTION CLAIMS**

**A.    The FAA Governs The Arbitration Agreement**

Under the Federal Arbitration Act ("FAA"), 9 United States Code section 1 *et seq.*, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[2] A party to

---

[1]/    Plaintiff's FAC does not allege any representative claims under California's Private Attorney General Act, Cal. Lab. Code §§ 2698, *et seq.* ("PAGA") (*See* Dkt. 1).
[2]/    Where it applies, the FAA preempts state laws that would otherwise invalidate or interfere with the enforcement of such arbitration agreements. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 271 (1995) (noting that Congress in enacting the

4

an arbitration agreement may, upon refusal of the other party to arbitrate a dispute arising under the agreement, move to compel arbitration. 9 U.S.C. § 4 (explaining that "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement" if an enforceable agreement to arbitrate exists).

The FAA "was enacted ... in response to widespread judicial hostility to arbitration agreements." *Concepcion*, 563 U.S. at 339. The "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms." *Id.* at 334 (internal quotes and citations omitted). The Supreme Court has described Section 2 "as reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Id*. at 339 (internal quotations omitted).

Here, the Arbitration Agreement is governed by the FAA, 9 U.S.C. §§ 2, 3 & 4, for two independent reasons. First, the Arbitration Agreement specifically provides that it is governed by the FAA. Second, Hyatt has multi-state business operations, which satisfies the interstate commerce requirement.

### 1. The Arbitration Agreement Provides That It Is Governed By The FAA

Plaintiff and Hyatt specifically agreed that the Arbitration Agreement is to be governed by the FAA. (Steenblock Decl., Ex. A at p. 2, § 5.) ("This [Arbitration] Agreement is made pursuant to and shall be governed under the Federal Arbitration Act.")

Thus, the Parties expressly agreed that Plaintiff's claims are governed by the FAA. *See, e.g.*, *Laver v. Credit Suisse Sec., LLC*, 976 F.3d 841, 845 (9th Cir. 2020) (affirming enforcement of arbitration agreement and dismissing putative class action claims because, "'[a]s with any other contract, the parties' 'intentions control'") (quoting *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) ("[C]ourts [are] to enforce agreements to arbitrate

FAA intended courts to "enforce [arbitration] agreements into which parties had entered, and to place such agreements upon the same footing as other contracts").

5

according to their terms."); *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) ("Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties. In this endeavor, as with any other contract, the parties' intentions control.") (internal quotes and citations omitted); *Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1119 (2006) (applying the FAA where the arbitration agreement at issue affirmatively stated that the agreement would be governed by the FAA; "there is no ambiguity regarding the parties' intent. They adopted the FAA—all of it—to govern their arbitration"); *Barrera v. Apple Am. Grp. LLC*, 95 Cal. App. 5th 63, 76 (2023) ("The FAA applies to contracts that involve interstate commerce (9 U.S.C. §§ 1, 2), but since arbitration is a matter of contract, the FAA also applies if it is so stated in the agreement").

In order to effectuate the purposes of the FAA, the U.S. Supreme Court has mandated that courts **must** rigorously enforce arbitration agreements. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("the [FAA] leaves no place for the exercise of discretion . . . but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

### 2. The Arbitration Agreement Evidences A Transaction Involving Commerce And Hyatt Has Multi-State Business Operations

Arbitration agreements entered into by employers with multi-state business operations, as is the case here, fall under the FAA because the employers are engaged in "commerce" for purposes of the FAA. *See Allied-Bruce,* 513 U.S. at 282 (holding that "the multistate nature" of defendants' business operations satisfied the FAA's commerce requirement); *Maxson v. Beazer Homes Holdings Corp.*, No. SA CV 17-0583-DOC (AFMx), 2017 WL 10545078, at *2 (C.D. Cal. June 21, 2017) (quoting *Allied-Bruce*, 513 U.S. at 282) (granting motion to compel arbitration; "It is undisputed that [p]laintiff was employed by a national corporation that does business throughout the United States. It

6

does not appear that [p]laintiff's job directly involved interstate commerce—but that is not required by the Supreme Court's 'broad' interpretation of § 2's language. Defendant's 'multistate nature' is sufficient for the Court to find that the FAA applies to the Agreement").[3]

Here, Hyatt is headquartered in Chicago, Illinois, and has business operations all over the country. (Dkt. 4, ¶ 6). Indisputably, Hyatt's "multistate" business operations satisfies the FAA's commerce requirement. Indeed, Courts in the Ninth Circuit have found that employers with operations in multiple states satisfy the FAA's commerce requirement. *See, e.g., Larios v. Twp. Bldg. Servs.*, No. 25-1936, 2025 WL 3172309, 2025 U.S. App. LEXIS 29689, at *3 (9th Cir. Nov. 13, 2025) ("Township presented uncontroverted evidence that it provides commercial janitorial services to 'commercial, industrial[,] and retail businesses' in multiple states….This is sufficient to establish that the plaintiffs' employment at Township 'affected commerce'"); *Langston v. 20/20 Cos.*, 2014 WL 5335734, at *4 (C.D. Cal. Oct. 17, 2014) (granting defendant's motion to compel after finding that the defendant had "multistate" business operations as it was "headquartered in Texas and 'engage[d] door-to-door sales representatives in multiple states, including but not limited to California'") (internal citation omitted); *Borgonia v. G2 Secure Staff, LLC*, No. 19-cv-00914-LB, 2019 WL 1865927, at *3, n.10 (N.D. Cal. Apr. 25, 2019) (granting defendant's motion to compel and finding that defendant's "'multistate nature' business operation satisfied the FAA's commerce requirement").

---

[3] *Accord Giuliano v. Inland Empire Pers., Inc.*, 149 Cal. App. 4th 1276, 1286-87 (2007) (holding that FAA's interstate commerce requirement was met "[g]iven [employer's] undisputed interstate business activities [operating in California and Arizona] and the broad construction we must give to the phrase 'evidencing a transaction involving commerce'"). Indeed, an employer's multistate presence is evidence of transacting interstate commerce. *See Giuliano,* 149 Cal. App. 4th at 1287.

DEFENDANT HYATT CORPORATION'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
326558633v.3

**B.      Plaintiff Agreed To Arbitrate His Claims And The Agreement Is Enforceable**

Under the FAA, courts merely "determin[e] (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (same). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement." *Id*.

Where these conditions are satisfied, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds,* 470 U.S. 213 at 218 (emphasis in original).[4]

Here, the prerequisites for an order compelling arbitration are all satisfied. First, a valid agreement to arbitrate exists. Second, the Arbitration Agreement encompasses Plaintiff's claims. Further, the provisions of the Arbitration Agreement are lawful, and the strong presumption in favor of arbitration requires that any doubt about the Arbitration Agreement be resolved in favor of arbitration.

**1.      The Parties Entered Into A Valid Agreement**

To evaluate the validity of an arbitration agreement, courts "should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F. 3d 1165, 1170 (9th Cir. 2003); *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000) (same). "Contract formation requires the parties' mutual assent." *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*, 211 Cal. App. 4th 230, 242 (2012). Under California law, "[t]he existence of mutual assent is determined by objective criteria, not by one party's subjective intent. The test is whether a reasonable person

---

[4]/     *See also* 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement").

would, from the conduct of the parties, conclude that there was a mutual agreement." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1050-51 (2001).

"Signature[s] indicate[] the intent of the signing party to be bound by the document." *Century Bank v. St. Paul Fire & Marine Ins. Co.*, 4 Cal. 3d 319, 327 (1971); *Marin Storage*, 89 Cal. App. 4th at 1049, as modified (June 8, 2001) ("[O]ne who signs an instrument which on its face is a contract is deemed to assent to all its terms. A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing.")

Here, Plaintiff signed the Arbitration Agreement on October 25, 2023, manifesting his intent to be bound by it. (Steenblock Decl., ¶ 9, Ex. A at p. 4). When Hyatt presented the Arbitration Agreement to him, Plaintiff was given the opportunity to review the terms of the Arbitration Agreement. (Steenblock Decl., ¶¶ 10-11).

In addition to signing the Arbitration Agreement, Plaintiff remained employed with Hyatt on November 4, 2023, and through his termination on December 6, 2024. (Steenblock Decl., ¶ 12). The Arbitration Agreement provides in its second paragraph that, "**You understand and agree that your continued employment with Hyatt as of November 4th, 2023 is deemed acceptance of this Agreement.  If you remain employed by Hyatt on or after November 4th, 2023, this Agreement will apply to you as a condition of your continued employment with Hyatt.**" (Steenblock Decl., Ex. 1 at p. 1) (emphasis in original).

Accordingly, Plaintiff's continued employment with Hyatt manifested his intent to be bound by the Arbitration Agreement. Courts have consistently held that assent to an arbitration agreement conditioned on continued employment is implied where an employee continues to work after being notified of the agreement. *Bayer v. Neiman Marcus Holdings, Inc.*, 582 Fed. Appx. 711, 713 (9th Cir. 2014) ("California's intermediate appellate courts have recognized that employees' consent may be implied from their continued employment after the unilateral imposition of an arbitration

9

agreement by the employer"); *Craig,* 84 Cal. App. 4th at 422  (affirming petition to compel arbitration; "there is substantial evidence (1) that the memorandum and brochure were received by [plaintiff] in 1993 and again in 1994; (2) that she continued to work for [defendant] until 1997; and (3) that she thereby agreed to be bound by the terms of the Dispute Resolution Program, including its provision for binding arbitration"); *Diaz v. Sohnen Enters.*, 34 Cal. App. 5th 126, 130 (2019) ("California law in this area is settled: When an employee continues his or her employment after notification that an agreement to arbitration is a condition of continued employment, that employee has impliedly consented to the arbitration agreement"); *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 381 (2016) (finding valid agreement to arbitrate existed where agreement provided that upon commencing employment, the employee was deemed to have consented to arbitration).

### 2.    The Arbitration Agreement Covers The Claims Asserted In Plaintiff's First Amended Complaint

Plaintiff's claims unquestionably fall within the Arbitration Agreement. Indeed, the language of the Arbitration Agreement is unequivocal, calling for the arbitration of "all Covered Claims" and arbitration is the "**only forum to address Covered Claims[**.]" (Steenblock Decl., Ex. A at p. 1, §1) (emphasis in original). The Parties agreed that "Covered Claims" include "any claims, asserted or unasserted, alleging underpayment or overpayment of wages, overtime, expenses, loans, advances, or any element of compensation, arising out of or based on claims of eligibility for overtime, on-the-clock work, off-the-clock work or other uncompensated hours worked claims, timing or amount of pay at separation, deductions of pay or paid time off, provision of meal or rest periods…pay statements, or any other claimed violation of wage-and-hour-practices or procedures under local, state or federal statutory or common law…" (*Id*., at p. 1).

All of Plaintiff's wage-and-hour claims arise from the employment relationship, including his claims for (1) unfair competition; (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4) failure to provide meal periods; (5) failure to authorize

10

and permit rest periods; (6) failure to provide accurate itemized wage statements; (7) failure to timely pay final wages at termination; (8) failure to indemnify employees for expenditures; (9) failure to permit inspection of employee records); and (10) failure to provide gratuities). (Dkt. 1, FAC, ¶¶ 77-156.) Accordingly, Plaintiff's claims are all within the scope of the Arbitration Agreement.

### 3. The FAA Favors The Enforcement Of Arbitration Agreements

The FAA establishes a strong federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or like defense to arbitrability."); *Rogers v. THD At-Home Servs., Inc.*, 2015 WL 12862912, at *3 (C.D. Cal. July 1, 2015) (granting defendant's motion to compel arbitration and noting that the "the Supreme Court has emphasized the 'liberal federal policy favoring arbitration agreements' embodied in the FAA") (quoting *Moses*, 460 U.S. at 24); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (noting the FAA establishes "a liberal federal policy favoring arbitration").

Accordingly, the Court should find that the FAA governs the Arbitration Agreement and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24-25.

### C. The Arbitration Agreement Allows Plaintiff To Pursue His Legal Rights And Complies With The Requirements Of *Armendariz*

To be enforceable, an arbitration agreement encompassing unwaivable statutory claims must contain certain minimum requirements so that an employee who signs such an arbitration agreement may effectively adjudicate his or her statutory claims through the arbitration process. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 96-97 (2000). Specifically, the arbitration agreement must: (1) provide for a neutral arbitrator; (2) allow for all remedies otherwise available in court; (3) provide for more

11

than minimal discovery; (4) require a written award; and (5) not require the employee to pay unreasonable arbitration forum costs. *Id*.

Here, Hyatt's Arbitration Agreement satisfies the substantive requirements set forth in *Armendariz*.[5] First, the Rules provide that "[e]ach person appointed to act as an Arbitrator in a proceeding…must remain throughout the arbitration or appeal, independent of the parties involved, and must act impartially on all issues" (Hyatt's Request for Judicial Notice ("RJN"), Ex. A, Rule 8.01). Second, the Arbitration Agreement provides that the "same substantive laws that would apply to a claim filed in an appropriate court apply to claims in arbitration. The same remedies, limitations periods, and administrative prerequisites to filing a lawsuit apply to an arbitration demand." (Steenblock Decl., Ex. A at p. 2, § 5). Third, the Arbitration Agreement provides for more than minimal discovery by allowing for 30 written discovery requests (interrogatories, document[] requests, requests for admission)" and allows each party to take "a maximum of three eight-hour days of depositions of witnesses." (*Id*. at p. 4, § (d)(2)-(3)). It also allows for additional discovery should a party "show[] of a need in order to adequately pursue a claim or defense." (*Id*., at (e)(1).) Fourth, the Arbitration Agreement provides that the "Award shall be in writing and shall describe the relief, if any, granted, and the decisions on the issues presented…Unless the parties agree otherwise, the Tribunal shall also issue an opinion in writing that may be incorporated into the Award by reference, and that should include the findings, reasons, and conclusions upon which the Award is based." (RJN, Ex. A, Rule 11.01). Fifth, the Arbitration Agreement does not require Plaintiff to pay unreasonable arbitration forum costs. To the contrary, the Arbitration Agreement provides, in pertinent part:

> You will be required to pay an initial filing fee set forth in the FedArb fee schedule in effect at the time of the commencement of the arbitration. If that fee is in excess of $400, Hyatt will pay that fee in excess of that amount. Hyatt will pay all other costs that are unique to arbitration, including the Arbitrator's fees and any other arbitration filing(s) and administrative fee(s).

---

[5]/ The Arbitration Agreement incorporates by reference the Rules for Arbitration of Federal Arbitration, Inc. (the "Rules") (Steenblock Decl., Ex. A at p. 3).

(Steenblock Decl., Ex. A at p. 3 § (b)).

Accordingly, the Arbitration Agreement is in compliance with the substantive requirements set forth in *Armendariz*.

**D.      The Arbitration Agreement Is Not Unconscionable**

Although Plaintiff may try to avoid his obligations to arbitrate by claiming that his agreement to arbitrate is unenforceable, the Arbitration Agreement must be enforced according to its terms. Proving that an arbitration agreement is unconscionable requires the party resisting enforcement to show that the agreement is ***both*** procedurally and substantively unconscionable. *Rogers*, 2015 WL 12862912, at *5 ("In order to render a contract unenforceable under the doctrine of unconscionability, there must be both a procedural and substantive element of unconscionability") (quoting *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778,783 (9th Cir. 2002)); *McMannus v. CIBC World Mkts. Corp.*, 109 Cal. App. 4th 76, 87 (2003).[6] As set forth below, Plaintiff cannot establish either procedural or substantive unconscionability.

**1.      The Arbitration Agreement Is Not Substantively Unconscionable**

An arbitration agreement is substantively unconscionable only if it is "so one-sided as to shock the conscience." *Walnut Producers of Cal. v. Diamond Foods, Inc.*, 187 Cal. App. 4th 634, 647-48 (2010). The most important consideration is whether the parties are provided equal rights. *Armendariz*, 24 Cal. 4th at 117 (holding that arbitration agreements must contain a "modicum of bilaterality"). For example, in *Stirlen v. Supercuts, Inc.*, 51

---

[6] These two elements are considered on a sliding scale. *McManus,* 109 Cal. App. 4th at 91 ("[A] sliding scale is invoked whereby the more procedurally oppressive the arbitration clause is, the less evidence of substantive unconscionability is required to warrant the conclusion that the agreements to arbitrate are unenforceable"). Even a minimal amount of both substantive and procedural unconscionability may not be enough to render an agreement unenforceable under this sliding scale. *See, e.g.*, *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 982 (2010) ("Because the degree of procedural unconscionability is minimal, the agreement is unenforceable only if the degree of substantive unconscionability is high"); *Marin Storage*, 89 Cal. App. 4th at 1056 ("In light of the low level of procedural unfairness, we conclude that a greater degree of substantive unfairness … was required before the contract could [be invalidated]").

13

Cal. App. 4th 1519 (1997), the California Court of Appeal held that where an arbitration agreement precluded the employee from filing claims against his employer, but protected the employer's ability to file claims against the employee, the agreement was substantively unconscionable. *Id*. 1528-29.

No such substantive deficiencies exist here. To the contrary, the Arbitration Agreement provides all parties with the same rights, responsibilities and protections, and it allows any party to pursue claims in arbitration when a covered claim arises. Under the Arbitration Agreement, the Parties have the same rights and obligations:

> **Both You and Hyatt understand and agree that arbitration is the only forum to address Covered Claims, and that the parties are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration.**

(Steenblock Decl., Ex. A at p. 1, § 1) (emphasis in original).

Accordingly, the Arbitration Agreement is not substantively unconscionable because the Parties are provided equal rights and obligations. *See, e.g.*, *Ramirez-Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008, 1021 (E.D. Cal. 2008) (granting motion to compel arbitration and concluding the arbitration agreement was not unconscionable because "both [the] employer and employee [we]re subject to the RCB Program" and "the RCB Program cover[ed] claims raised by both [the] employer and employee").

### 2.    The Arbitration Agreement Is Not Procedurally Unconscionable

The absence of substantive unconscionability alone compels enforcement of the Arbitration Agreement. *See Ramirez-Baker*, 636 F. Supp. 2d at 1024 ("Both procedural and substantive unconscionability must be present for a court to refuse to enforce an arbitration agreement under the doctrine of unconscionability.") Regardless, even if the Court found evidence of substantive unconscionability, the Arbitration Agreement is not procedurally unconscionable and, therefore, is enforceable.

"Mere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). Significantly, arbitration

14

agreements are not invalid simply because they are imposed as a condition of employment. *Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1127-28 (1999) (affirming employer's discharge of employee who refused to sign arbitration agreement: "under both federal and state law, an employee's rights to a jury trial and a judicial forum can be validly waived by agreement, even where the waiver is required as a condition of employment").

Instead, for an agreement to be procedurally unconscionable, there must be an element of "oppression" or "surprise." *Armendariz*, 24 Cal. 4th at 96-97. "Surprise" involves the extent to which the terms of an agreement are "hidden in a prolix printed form" drafted by the party seeking to compel arbitration. *See Villa Milano Homeowners Ass'n v. Il Davorge*, 84 Cal. App. 4th 819, 828-29 (2000) (arbitration language that appeared in regular typeface on the 67th page of 70-page document was a "surprise" to party opposing arbitration— "[t]he arbitration clause was decidedly well-buried in a heap of paper").

Here, Plaintiff cannot claim "oppression" or "surprise." First, Plaintiff was provided with a copy of the Arbitration Agreement, which contained an acknowledgement form, during a live meeting in which the terms were explained in detail and employees, including Plaintiff, were afforded time to ask questions. (Steenblock Decl., ¶¶ 4-9, Ex. A.) Plaintiff was also provided his own copy of the Arbitration Agreement, given additional time to review the Arbitration Agreement, and ask questions about it before it would become binding. (*Id*.) *See, e.g.*, *De Alba v. Brinker Int'l, Inc.*, No. CV 16-3486 FMO (JCx), 2017 WL 10543656, at *5 (C.D. Cal. June 30, 2017) (granting motion to compel to arbitration; "plaintiffs received the subject arbitration agreements as part of a packet of documents prior to being hired. Thus, they cannot claim to be surprised by the arbitration agreements, even if the agreements were included in a packet of employment-related documents").

15

Second, the Arbitration Agreement cannot be characterized as hidden, given that the header conspicuously states "**MUTUAL AGREEMENT TO ARBITRATE PAY AND PRIVACY DISPUTES.**" (Steenblock Decl., Ex. A at p. 1) (emphasis in original).

Third, the introductory paragraph of the Arbitration Agreement provides in bold text that Plaintiff should read the Agreement carefully as it affects his rights: "Please review this agreement, and if you have any questions, contact Human Resources. **You understand and agree that your continued employment with Hyatt as of November 4th, 2023 is deemed acceptance of this Agreement. If you remain employed by Hyatt on or after November 4th, 2023, this Agreement will apply to you as a condition of your continued employment with Hyatt.**" (Steenblock Decl., Ex. A at p. 1).

Fourth, the Arbitration Agreement sets forth what claims are covered under the Arbitration Agreement, the arbitration process, and arbitration fees and location with headers in underlined or bolded font. (*See generally, id.* Ex. A).

Fifth, Plaintiff voluntarily signed and dated the Arbitration Agreement's acknowledgement form free of duress. *See, e.g.*, *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016) (affirming that the arbitration agreement was not unconscionable; "[plaintiff] was not lied to, placed under duress, or otherwise manipulated into signing the arbitration agreement"); *Marin Storage*, 89 Cal. App. 4th at 1049 ("[O]ne who signs an instrument which on its face is a contract is deemed to assent to all its terms. A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing.")

### 3.    Any Unconscionable Terms Can Be Severed

"The basic principles of severability . . . [are] applicable to the doctrine of unconscionability." *Armendariz*, 24 Cal. 4th at 124. As established above, there are no unconscionable terms in the Arbitration Agreement. To the extent the Court does find any particular term unconscionable, however, the Court may sever that term and enforce the rest of the Arbitration Agreement.

16

DEFENDANT HYATT CORPORATION'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
326558633v.3

In *Armendariz*, the California Supreme Court explained that a trial court may, when faced with an unconscionable contract provision, "enforce the remainder of the contract without the unconscionable clause." *Armendariz*, 24 Cal. 4th at 121-22. While a trial court may refuse to enforce an entire agreement, *Armendariz* held that a court may take such drastic action only when an agreement is "permeated by unconscionability." *Id.* at 122; *see also Poublon v. C.H. Robinson Co.,* 846 F.3d 1251, 1273-74 (9th Cir. 2016) (holding that arbitration agreements containing two unconscionable provisions was enforceable as the two provisions could be severed and the parties could proceed under the remaining terms).

Here, the Agreement mutually binds the Parties to arbitration and establishes fair procedural safeguards. Unconscionability does not "permeate" the Agreement. Indeed, it is wholly absent from the Agreement. The Arbitration Agreement also contains a severability clause, which provides:

> If any provision of this [Arbitration] Agreement is determine to be unenforceable or in conflict with a mandatory provision of applicable law, it shall be construed to incorporate any mandatory provision and/or unenforceable or conflicting provision shall be automatically severed and the remainder of the [Arbitration] Agreement shall not be affected and remain in full force…

(Steenblock Decl., Ex. A at p. 2).

Thus, if the Court finds that any clause or provision is inappropriate, it may sever that clause or provision and enforce the remainder of the Arbitration Agreement.

### E.    The Class Allegations Must Be Dismissed Because The Arbitration Agreement Contains A Valid Class Action Waiver

The Supreme Court's decision in *Epic Systems* left no doubt that class action waivers in arbitration agreements are enforceable under the FAA. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 517 (2018). In *Epic Systems*, the Supreme Court held that class action waivers in arbitration agreements do not violate the National Labor Relations Act and must be enforced. *Id*.

17

The Supreme Court also confirmed what it called "*Concepcion's* essential insight," which is that "courts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent." *Id.* at 509; *see also Concepcion,* 563 U.S. at 344 (holding that the FAA preempts any state laws conditioning the enforceability of arbitration provisions on the availability of class or collective procedures because such rules interfere with the fundamental goal of the FAA, which "is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings.").[7]

Here, the Arbitration Agreement contains a valid class action waiver that expressly states:

> Waiver of Class and Collective Claims. You and Hyatt also agree that Covered Claims will be arbitrated only on an individual basis, and not as part of a class, collective, or representative action. This means that you waive the right to bring, participate in, join, or receive money or any other relief from any class, collective, or representative proceeding. Without Hyatt's consent, an Arbitrator may not: (i) combine more than one individual's claim or claims into a single case; (ii) facilitate notification of others of potential claims; (iii) arbitrate any form of a class, collective, or representative proceeding; or iv) award relief not limited to the individual claimant.

(Steenblock Decl., Ex. A at p. 1, § 2).

Accordingly, the Arbitration Agreement bars Plaintiff from asserting class allegations in arbitration, as well as in court. After compelling Plaintiff's individual claims to arbitration, this Court must dismiss Plaintiff's class allegations without prejudice. *See, e.g.*, *Anthony v. Ritz-Carlton Hotel Co., L.L.C.,* No. 2:24-CV-00965-DAD-AC, 2025 WL 931928, at *10 (E.D. Cal. Mar. 27, 2025) ("Because there is a valid and enforceable agreement to arbitrate between the parties and the claims raised in plaintiff's

---

[7]/    Class action waivers are enforceable under California law as well. The California Supreme Court reaffirmed the validity of class waivers under California law, holding such provisions valid in light of *AT&T Mobility*. *See Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 360 (2014), *abrogated on other grounds by Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022) ("The question is whether a state's refusal to enforce [a class] waiver on grounds of public policy or unconscionability is preempted by the FAA. We conclude that it is.")

18

complaint fall within the scope of the Acknowledgement, the court must compel arbitration of plaintiff's individual claims. The court therefore will grant defendant's motion to compel arbitration of plaintiff's individual claims and will dismiss plaintiff's class claims."); *Rios v. Sally Beauty Supply LLC*, Case No. 8:24-cv-00912-JWH-JC, 2025 WL 863616, at, *4 (C.D. Cal. Feb. 18, 2025) (dismissing class claims where plaintiff did not dispute enforceability of waiver of right to bring class claims); *Tercero v. Sacramento Logistics LLC*, No. 2:24-cv-00953-DC-JDP, 2025 WL 43125, at *13 (E.D. Cal. Jan. 6, 2025) (dismissing class claims where plaintiff expressly waived the right to bring or participate in a class action and plaintiff did not contend the class action waiver was inapplicable or unenforceable); *Davtian v. Uber Techs., Inc.*, Case No. 24-cv-5195-CRB, 2024 WL 4861590, at *6 (N.D. Cal. Nov. 4, 2024) (dismissing class claims pursuant to a valid class action waiver contained within arbitration agreement); *Mehmud-Bey v. Luxottica of Am. Inc.*, Case No. 2:24-cv-04605-FWS-MAA, 2024 WL 4818800, at *6-7 (E.D. Cal. Oct. 21, 2024) (finding class action waiver contained in arbitration agreement is enforceable and dismissing plaintiff's class claims); *Suchite v. ABM Aviation, Inc.*, 741 F. Supp. 3d 878, 889 (S.D. Cal. 2024) (granting motion to strike class claims because of valid class action waiver).

## IV.   THE COURT SHOULD DISMISS, OR IN THE ALTERNATIVE, STAY THE CASE PENDING RESOLUTION OF ARBITRATION

When deciding a motion to compel arbitration, "a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). At a minimum, "[u]pon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration" and "shall also stay the proceedings pending resolution of the arbitration at the request of one of the parties bound to arbitrate." *Hawkins v. Ford Motor Co.*, No. EDCV21881JGBSHKX, 2021 WL 9031130, at *2 (C.D. Cal. Nov. 24, 2021).

19

326558633v.3

If the Court does not dismiss the action entirely, in the alternative, Hyatt requests that the case be stayed pending the arbitration of any arbitrable claims. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, Section 3 of the FAA compels the court to stay the proceeding.")

## V.   CONCLUSION

For the foregoing reasons, Hyatt respectfully requests that the Court grant its Motion, dismiss the class claims, compel arbitration of Plaintiff's individual claims in accordance with the Arbitration Agreement and dismiss, or in the alternative, stay the case pending completion of arbitration.

DATED: June 26, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Brian Long*
Brian Long
Michael Afar
Richard B. Mojica
Attorneys for Defendant
HYATT CORPORATION dba THE
SEABIRD A DESTINATION
HOTEL

20